UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ROGER D. WALDNER, | ) | Civ. 12-4153-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION FOR PARTIAL JUDGMENT |
| TIMOTHY L. JAMES; | ) | ON THE PLEADINGS AND DENYING |
| JAMES LAW, P.C.; and | ) | DEFENDANTS' MOTION FOR |
| JAMES & ASSOCIATES, P.C., | ) | PARTIAL SUMMARY JUDGMENT |
| | ) | |
| Defendants. | ) | |

Plaintiff, Roger D. Waldner, is an inmate at the Federal Prison Camp in Yankton, South Dakota. Docket 38. Waldner filed a pro se lawsuit against defendants, Timothy L. James, James Law, P.C., and James & Associates, P.C., alleging three counts of mail fraud and one count each of wire fraud, racketeering, legal malpractice, and breach of fiduciary duty. *Id.* Defendants move for partial judgment on the pleadings, asserting that Waldner failed to state a claim upon which relief may be granted with regard to his claims of wire fraud, mail fraud, and racketeering. Docket 24. Defendants also move for partial summary judgment with regard to Waldner's legal malpractice and breach of fiduciary duty claims. Docket 26. Waldner opposes both motions. Dockets 33, 34. For the reasons set forth herein, the court grants defendants' motion for partial judgment on the pleadings (Docket 24) and denies defendants' motion for partial summary judgment (Docket 26).

## FACTUAL BACKGROUND

In the light most favorable to Waldner, the facts are as follows:

In 2006, Waldner retained the legal services of Timothy L. James for the purpose of bringing an action for legal malpractice against A. Thomas Pokela, an attorney who allegedly mishandled the defense of multiple lawsuits against Waldner. Docket 1 at ¶¶ 16–17. James filed the action on May 1, 2009, and on August 17, 2009, after Pokela failed to answer the complaint, the Minnehaha County Circuit Court entered a judgment of default against Pokela. *Id.* at ¶¶ 21, 23–24. A prove-up hearing was held on April 14, 2011, at which time the state court considered James's affidavit in support of damages. *Id.* at ¶¶ 25–26. Thereafter, the state court entered a judgment against Pokela in the amount of $1,652,783.30 and awarded $814,618.51 in pre-judgment interest.[1] *Id.* at ¶ 28.

According to Waldner, the original complaint in the malpractice action against Pokela listed judgments from seven cases wherein Pokela represented Waldner, in which the actual damages and post-judgment interest totaled $2,604,358.19. Docket 1 at ¶ 31. When James prepared his affidavit for the prove-up hearing, however, he represented the total amount to be $2,467,401.97—a difference of $136,956.22. *Id.* at ¶¶ 32–33. Nonetheless,

---

[1] These numbers reflected the amounts set forth in James's affidavit in support of damages. Docket 1 at ¶ 29.

2

Waldner now alleges that the total amount of damages and post-judgment interest stemming from the seven cases wherein Pokela committed legal malpractice should have been $3,525,747.53. *Id.* at ¶ 34. Consequently, as a result of James's alleged legal malpractice, Waldner claims he has been deprived of $2,976,118.61 in damages, plus post-judgment interest. *Id.* at ¶¶ 35–36. Waldner now alleges that James conspired with Pokela to help Pokela avoid liability, thus committing mail fraud, wire fraud, racketeering, legal malpractice, and a breach of his fiduciary duty. Docket 1.

### STANDARDS OF REVIEW

### I. Judgment on the Pleadings

"The applicable standard of review on a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is the same as that on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Cain v. Ark. Dep't of Corr.*, No. 5:05CV00053HLJ, 2006 WL 2547401, at *1 (E.D. Ark. Sept. 1, 2006) (citations omitted); *see also Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (noting that courts review a 12(c) motion under the same standard that governs a 12(b)(6) motion (citations omitted)). "Judgment on the pleadings is appropriate when there are no material facts to resolve and the moving party is entitled to judgment as a matter of law." *Mills v. City of Grand Forks*, 614 F.3d 495, 497–98 (8th Cir. 2010) (citation omitted). "The facts pleaded by the non-moving party must be accepted as true and all reasonable inferences from

3

the pleadings should be taken in favor of the non-moving party." *Id.* (citation omitted). "The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Id.* (citation omitted); *see also* Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1371, at 276 (2004) ("Conversion . . . will not occur with regard to all matters subject to judicial notice and things that are central or integral to the nonmoving party's pleading.").

Pro se complaints, " 'however inartfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers.' " *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nonetheless, a pro se complaint must comply with the minimal requirements set forth in the Federal Rules of Civil Procedure, which specifically require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a pro se complaint need not contain detailed factual allegations, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pro se complaint must "allege facts sufficient to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The court is not required to "supply additional facts, nor will [it] construct a legal theory that assumes facts that have not been pleaded." *Id.*

4

(citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). If the complaint does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

## II.   Summary Judgment

"Summary judgment is appropriate when the evidence,[2] viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see also* Fed. R. Civ. P. 56(a). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving

---

[2] The evidence includes the pleadings, depositions, documents, electronically stored information, stipulations, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c).

party may not "rest upon mere denials or allegations." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." *Id.*

As previously indicated, prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Moreover, the court is not "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980).

## DISCUSSION

I.    **The court grants defendants' motion for partial judgment on the pleadings.**

Defendants assert they are entitled to judgment on the pleadings with regard to Waldner's claims of mail fraud, wire fraud, and racketeering. Dockets 24, 25. Waldner opposes defendants' motion. Docket 34. For the following reasons, the court grants defendants' motion for partial judgment on the pleadings.

### A.    **Waldner has failed to sufficiently allege mail and wire fraud.**

Waldner alleges that defendants committed mail fraud each time defendant James mailed an allegedly false or inaccurate document to the court in relation to the legal malpractice action against Pokela—once on May 1, 2009, when he mailed a copy of the complaint to the circuit court (Docket 1 at ¶¶ 37–46); once on March 18, 2011, when he mailed copies of the "Notice of Prove-Up Hearing" and the "Affidavit of Timothy L. James in Support of Damages Prove-Up" to the circuit court (Docket 1 at ¶¶ 47–58); and once on April 14, 2011, when he mailed copies of the "Notice of Entry of Order" and the court's judgment to the circuit court (Docket 1 at ¶¶ 59–69). Because each of the mailed documents contained allegedly "erroneous" information regarding the extent of actual damages suffered by Waldner as a result of Pokela's legal malpractice, Waldner contends that each mailing constituted mail fraud under

18 U.S.C. § 1341. Further, Waldner alleges that defendants committed wire fraud on or about April 19, 2011, when James failed to send Waldner the documents he had requested over the telephone. According to Waldner, because the requests were made by telephone, James's failure to send requested documents constituted wire fraud under 18 U.S.C. § 1343.

The statutes under which Waldner wishes to hold defendants liable—18 U.S.C. §§ 1341, 1343—are federal criminal statutes. As defendants have correctly asserted, a private cause of action does not exist under 18 U.S.C. § 1341. *See Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir. 1999) (holding "that Congress did not intend to create a private right of action in enacting either the mail or wire fraud statutes"). Moreover, in his response to defendants' motion for partial judgment on the pleadings, Waldner concedes that he did not intend for the wire and mail fraud counts to be independent claims, but rather proof of predicate acts in support of Waldner's racketeering claim. Docket 34 at 2. Although the court will consider the facts alleged within the mail and wire fraud claims when considering Waldner's racketeering claim, such claims fail as independent grounds for relief. Accordingly, defendants are entitled to judgment in their favor on the mail and wire fraud claims, and such claims are dismissed.

**B.    Waldner has failed to sufficiently allege a RICO claim.**

Waldner alleges that defendants engaged in multiple acts of mail and wire fraud to defraud Waldner of money to which he was entitled, thereby participating in a pattern of racketeering activity that was part of the same continuous and ongoing enterprise. Docket 1 at ¶ 89. Moreover, Waldner alleges that defendants engaged in other "[p]redicate [a]cts, which included instances of . . . False Statements (1001), and Right to Honest Service . . . ." *Id.* at ¶ 94. Included in this alleged activity were other members of James's law firm, A. Thomas Pokela, and the Circuit Court of Minnehaha County. *Id.* at ¶ 90. As a result of defendants' actions, Waldner obtained a judgment "substantially below the Actual Damages suffered . . . , causing [Waldner] to lose money and to suffer interest penalties upon such losses as he was otherwise Legally Entitled to under the Law." Docket 1 at ¶ 96.

"To recover in a civil suit for a violation of RICO, a plaintiff must prove: (1) that the defendant violated 18 U.S.C. § 1962; (2) that the plaintiff suffered injury to business or property; and (3) that the plaintiff's injury was proximately caused by the defendant's RICO violation." *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 894 (8th Cir. 1999) (citations omitted). In the instant case, Waldner has alleged that defendants violated subsection (c) of 18 U.S.C. § 1962. Docket 1 at ¶¶ 88–98.

Under subsection (c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To state a claim under § 1962(c), "a plaintiff must establish (1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity." *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir. 1996). Moreover, "the plaintiff must demonstrate that 'he has been injured in his business or property by the conduct constituting the violation.' " *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

To state a claim pursuant to § 1962(c), a plaintiff must first allege the existence of an enterprise. An enterprise must possess three characteristics: "[a] common or shared purpose, some continuity of structure[3] and personnel, and an ascertainable structure distinct from that inherent in a pattern of

---

[3] The Eighth Circuit has defined "continuity of structure" as " 'an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc basis.' " *Rolfes v. MBNA Am. Bank N.A.*, 416 F. Supp. 2d 745, 751 (D.S.D. 2005) (quoting *United States v. Kragness*, 830 F.2d 842, 856 (8th Cir. 1987)).

racketeering." *McDonough v. Nat'l Home Ins. Co.*, 108 F.3d 174, 177 (8th Cir. 1997) (internal citations omitted). To establish the third characteristic—a distinct structure—a plaintiff must show "that the common activities of the enterprise extend beyond the minimal association necessary to sustain the pattern of racketeering." *Id.* at 177 (internal citations omitted). " 'Th[e] distinct structure might be demonstrated by proof that a group engaged in a diverse pattern of crimes or that it has an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes.' " *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 770 (8th Cir. 1992) (quoting *United States v. Bledsoe*, 674 F.2d 647, 665 (8th Cir. 1982)).

Defendants assert that they are entitled to judgment on the pleadings because Waldner has (1) failed to allege an "enterprise" within the meaning of § 1962(c); and (2) failed to allege a continuous pattern of racketeering activity as required by § 1962(c). Docket 25 at 4–10. Waldner argues, however, that his complaint alleges the existence of an enterprise by focusing on James's law firm. Docket 34 at 3. By establishing that James used his law firm to both engage in the general practice of law and conspire with Pokela to defraud Waldner, Waldner asserts that he has "provided a common link between all Parties to the Enterprise beyond the Racketeering Activities in Question." *Id.*

Waldner does not, however, allege facts to suggest that defendants were associated with Pokela for any other purpose than to defraud Waldner.

11

Although James's law firm represents an "ascertainable structure distinct from that inherent in a pattern of racketeering," *McDonough*, 108 F.3d at 177, Waldner has failed to allege that Pokela was associated with that distinct structure for any purpose other than to defraud Waldner.[4] The complaint does not allege that defendants had an association with Pokela were the alleged predicate acts removed from the equation. Without an association, no enterprise exists. *See Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997) ("In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is our normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation."). Consequently, the court finds that Waldner has failed to allege the existence of an enterprise within the meaning of § 1962(c).[5] Defendants are therefore entitled to judgment in their favor on Waldner's racketeering claim, and such claim is dismissed.

---

[4] In fact, Pokela is not even a party to this action.

[5] With regard to a continuous pattern of racketeering activity, Waldner asserts that he has provided four examples of predicate acts—mail fraud, wire fraud, false statements, and right to honest service—which occurred over the course of four years, thus sufficiently alleging a continuous pattern of racketeering activity. Docket 34 at 4–5. Because a RICO claim cannot survive absent the existence of an enterprise, however, the court need not decide whether Waldner alleged a continuous pattern of racketeering activity.

## II.     The court denies defendants' motion for partial summary judgment.

Defendants assert they are entitled to summary judgment with regard to Waldner's legal malpractice and breach of fiduciary duty claims. Dockets 26, 27. Waldner opposes defendants' assertions. Docket 33. For the following reasons, the court denies defendants' motion for partial summary judgment.

Waldner alleges that "Defendant James was negligent and breached his duty to the Plaintiff in the following" ways:

    a.    Failing to assert available claims;
    b.    Failing to correctly list all damages suffered by the Plaintiff Waldner in the complaint;
    c.    Failing to Correctly list all damages suffered by the Plaintiff Waldner in his Affidavit of damages;
    d.    Failing to present evidence to the Court at the Prove-Up Hearing regarding all damages suffered by the Plaintiff Waldner;
    e.    Failing to ensure the Court Entered a Judgement for the Correct amount of damages suffered by the Plaintiff Waldner;
    f.    Failing to comply with requests from the Plaintiff Waldner to provide Information regarding the Case;
    g.    Failing to File necessary Motions;
    i.    Failing to obtain and/or introduce necessary evidence and testimony regarding damages suffered by the Plaintiff Waldner;
    j.    Generally failing to carry out the duties, obligations and functions of Legal Counsel with proper skill, diligence and care required.

Docket 1 at ¶ 100. As a direct and proximate result of James's alleged legal malpractice, Waldner represents that he suffered actual money damages, loss of pre- and post-judgment interest, and "other general and special damages in an amount to be determined at Trial." *Id.* at ¶ 101.

To establish a legal malpractice claim under South Dakota law, a plaintiff must prove the following: "(1) the existence of an attorney-client relationship giving rise to a duty; (2) that the defendant attorney[], either by act or omission, violated or breached that duty; (3) that the attorney[]'s breach of duty proximately caused injury to plaintiff; and (4) that plaintiff sustained actual injury, loss, or damage." *Randall v. Bantz, Gosch, Cremer, Peterson and Sommers*, 883 F. Supp. 449, 450 (D.S.D. 1995) (citing *Haberer v. Rice*, 511 N.W.2d 279, 284 (S.D. 1994)). To establish a breach of fiduciary duty under South Dakota law, a plaintiff must prove the following: "(1) that the defendant was acting as plaintiff's fiduciary; (2) that the defendant breached a fiduciary duty to plaintiff; (3) that plaintiff incurred damages; and (4) that the defendant's breach of the fiduciary duty was a cause of plaintiff's damages." *Chem-Age Indus., Inc. v. Glover*, 652 N.W.2d 756, 772 (S.D. 2002) (citation omitted).

In support of their motion for partial summary judgment, defendants argue that Waldner cannot show " 'that a judgment in [his] favor would have been collectible.' " Docket 27 at 4 (quoting *Haberer*, 511 N.W.2d at 285). According to defendants, Pokela is allegedly insolvent and thus incapable of satisfying the existing damages award. Therefore, even if Waldner could establish that he was entitled to a larger default judgment award than what he initially received, he would be unable to collect such an award. Accordingly,

14

defendants maintain that Waldner cannot establish a necessary element of a legal malpractice or breach of fiduciary claim as he has not sustained an actual, recoverable loss.

To support their claim that Pokela is insolvent, defendants have submitted an affidavit wherein Pokela represents that "Waldner would not have been able to collect a judgment in any amount greater than $1,652,783.30 because [Pokela] had no significant assets and a substantial amount of debt in [his] name" (Docket 29 at ¶ 7); that Pokela "did not have malpractice liability insurance coverage that would have paid the amount of damages, if any, [he] was found liable for in the malpractice action brought by [James on behalf of] Mr. Waldner" (Docket 29 at ¶ 8); that "[o]n August 1, 2011 [Pokela] entered a guilty plea to Conspiracy to Commit Wire Fraud" and was subsequently imprisoned and ordered to pay restitution in the amount of $848,909.48 (Docket 29 at ¶¶ 10–11); that Pokela has approximately $150,000 in other debt (Docket 29 at ¶ 13); that Pokela owes "the United States Federal Government outstanding federal income tax payments in an approximate amount of $50,000" (Docket 29 at ¶ 14); that Pokela is currently unemployed due to a shoulder injury (Docket 29 at ¶ 16); that Pokela's only source of income is his monthly Social Security payment in the amount of $2,200 (Docket 29 at ¶ 17); that Pokela lost his home in foreclosure and currently rents a home for $700 per month (Docket 29 at ¶ 18); that Pokela

15

and his wife are divorced (Docket 29 at ¶ 19); and that Pokela has no

significant assets (Docket 29 at ¶ 20).[6]

In his reply brief, Waldner has requested additional time to conduct

discovery with regard to whether Pokela is, in fact, insolvent. Docket 55.

Pursuant to Federal Rule of Civil Procedure 56(d),

> [i]f a nonmovant shows by affidavit or declaration that, for
> specified reasons, it cannot present facts essential to justify its
> opposition, the court may: (1) defer considering the motion or
> deny it; (2) allow time to obtain affidavits or declarations or to take
> discovery; or (3) issue any other appropriate order.

See also In re Temporomandibular Joint Implants Prod. Liab. Litig., 113 F.3d

1484, 1490 (8th Cir. 1997) (citation omitted) ("[S]ummary judgment is proper

only after the nonmovant has had adequate time for discovery.").

In the instant case, Waldner has specifically disputed seven statements

from Pokela's affidavit. Docket 55. Waldner has also submitted a "declaration"

in which he outlines disputed material facts and indicates the type of

information he plans to request from defendants to support his contentions.

Docket 56. Waldner also alleges that part of defendants' malpractice was

defendants' failure to diligently pursue Waldner's claim against Pokela. Docket

33. Had the claim been diligently pursued, Waldner claims Pokela's financial

---

[6] To support Pokela's representations, defendants have submitted the
judgment from his criminal case wherein restitution was ordered in the amount
of $848,909.48 (Docket 29-1) and an e-mail wherein an ALPS claims attorney
states that Pokela's "last policy with ALPS was cancelled as of 7/15/2008 and
he did not qualify for a tail policy" (Docket 45-1).

condition and malpractice insurance coverage would have been different. The court finds that the issues of Pokela's solvency and insurance coverage, both at the time of the default judgment and during the previous three years, are relevant to this case and therefore denies defendants' motion for partial summary judgment so as to allow Waldner an adequate opportunity to conduct further discovery. Accordingly, it is

ORDERED that defendants' motion for partial judgment on the pleadings (Docket 24) is granted.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket 26) is denied. Waldner may conduct discovery on the issue of Pokela's solvency and malpractice insurance coverage with a discovery deadline of **May 20, 2014**.

Dated February 21, 2014.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE